# In the United States Court of Federal Claims

No. 11-180C
(Consolidated with Case No. 11-190C)

(Filed: May 16, 2011)
(Released for Publication: May 26, 2011)[1]

```
*************************************
                                     *
JACOBS TECHNOLOGY INC.,              *
                                     *
                Plaintiff,           *
                                     *
     v.                              *
                                     *
THE UNITED STATES,                   *
                                     *
                Defendant,           *
     and                             *
                                     *
IBM GLOBAL BUSINESS SERVICES,        *
                                     *
                Defendant-Intervenor.*
                                     *
*************************************
```

*Robert J. Symon*, Bradley Arant Boult Cummings LLP, Washington, D.C., for Jacobs Technology Inc. (Plaintiff and Defendant-Intervenor).

*K. Elizabeth Witwer*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

*Thomas P. Humphrey*, Crowell & Moring, LLP, Washington, D.C., for IBM Global Business Services (Defendant-Intervenor and Plaintiff).

---

[1] This opinion was originally issued under seal on May 16, 2011, pending a determination among the parties whether to propose redactions of proprietary or other confidential information. The parties have advised the Court that they have no redactions to propose.

## **OPINION AND ORDER**

**DAMICH**, Judge

Before the Court in this consolidated bid protest case is the Defendant United States' (the "Government's") motion to dismiss the complaint of Plaintiff Jacobs Technology Inc. ("Jacobs") for lack of jurisdiction. In brief, following a competitive procurement, the United States Special Operations Command ("USSOCOM" or the "agency") awarded Jacobs an Information Technology Services Management contract. IBM Global Business Services ("IBM"), an unsuccessful bidder, filed a bid protest with the United States Government Accountability Office ("GAO"), and the agency stayed performance of the contract. GAO sustained two grounds of IBM's bid protest and recommended that the agency issue an amendment to the solicitation and allow offerors to submit revised proposals. The agency adopted GAO's recommendations. Jacobs then filed a bid protest complaint in this court on March 21, 2011, challenging the agency's decision to follow GAO's recommendations.[2]

Pertinent to this opinion, Jacobs filed a motion for judgment on the administrative record on April 11, 2011. On April 25, 2011, the Government filed its Motion to Dismiss, and in the Alternative, Cross-Motion for Judgment upon the Administrative Record and Response to Plaintiffs' Motions for Judgment on the Administrative Record.[3] On the instant motion to dismiss, the Government urges the Court to dismiss Jacobs' claims because: (1) they fall outside the Tucker Act; (2) they are not ripe for review; (3) Jacobs lacks standing, both under Article III of the United States Constitution and under 28 U.S.C. § 1491; and (4) the agency action is committed to agency discretion by law.

For the reasons explained below, the Government's motion to dismiss Jacobs' claims is denied.

**Jacobs' Claims Are Within the Scope of the Tucker Act**

The pertinent part of the Tucker Act, 28 U.S.C. § 1491(b)(1), grants the Court jurisdiction "on an action by an interested party objecting to a solicitation…for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." Although this provision grants the Court jurisdiction over (1) a "solicitation," (2) a "proposed award" (3) an "award" *or* (4) "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement," the Government argues that, in addition to objecting to a solicitation, a proposed award or an award, a party must point to a violation of a specific statute or regulation. In other words, it is not enough to invoke this Court's jurisdiction simply to allege that an agency acted arbitrarily in rescinding an award, taking corrective action, and resoliciting a contract. Authority for this (seemingly extraordinary) proposition, according to the

---

[2]  IBM filed its protest in this court on March 28, 2011, challenging both the initial procurement (on the grounds not addressed by GAO) and challenging the amended solicitation that the agency issued in response to GAO's recommendations. On motion by the parties, the Court consolidated the bid protest cases of Jacobs (Case No. 11-180C) and IBM (Case No. 11-190C). Each plaintiff is also a defendant-intervenor in the other plaintiff's case.

[3]  For purposes of this opinion, the Court refers to the Government's brief as "Def.'s Mot. to Dismiss."

Government, includes the Federal Circuit case of *Distributed Solutions, Inc. v. United States*, 539 F.3d 1340 (Fed. Cir. 2008) and the Court of Federal Claims case of *Data Monitor Systems, Inc. v. United States*, 74 Fed. Cl. 66 (2006).

Jacobs asserts that it is "challenging the agency's amendment to the solicitation, the resolicitation of proposals, and the *de facto* rescission of [its] contract" and that it need not allege violation of a statute or regulation "as a predicate to relief." Pl. Jacobs' Opp'n to Def.'s Mot. to Dismiss ("Jacobs' Opp'n") 6 n.2. Jacobs emphasizes the language of the Tucker Act granting this Court jurisdiction over objections to solicitations, proposed awards and awards (quoted above), and it also notes the last phrase of the provision: "without regard to whether suit is instituted before or after the contract is awarded." It points to several recent decisions of the Court of Federal Claims[4] and to bid protest decisions in the Federal Circuit that have proceeded without seeing a jurisdictional issue on facts and allegations similar to Jacobs'.[5]

This Court is not persuaded by the Government's argument. It seems to be based on a conflation of two different grounds for jurisdiction stated in the Tucker Act, namely, (1) objecting to a solicitation, a proposed award or an award and (2) objecting to an "alleged violation of statute or regulation in connection with a procurement or a proposed procurement." In the statute, the latter cause of action is preceded by "or," which clearly indicates that this is a separate ground of jurisdiction. Furthermore, there is no Federal Circuit authority for the Government's argument, and this Court is not persuaded by the only Court of Federal Claims case that seems to support it.

The Federal Circuit case relied on by the Government, *Distributed Solutions*, is not relevant, because this case concerned only the ground of "violation of statute or regulation." In this posture, it seems unobjectionable that there would be a requirement of alleging a specific statute or regulation for this court to have jurisdiction. It does not stand for the proposition that alleging the violation of a specific statute or regulation is a requirement when a case is brought on a solicitation, a proposed award or an award that is alleged to be arbitrary or capricious.

This Court is not persuaded by the Court of Federal Claims' case of *Data Monitor Systems (DMS)*, because it seems that the court in *DMS* may also have conflated the separate jurisdiction grounds of solicitation, proposed award or award, on the one hand, and violation of a statute or regulation, on the other. In that case, the Air Force awarded a contract to Data Monitor Systems (DMS). T Square, an unsuccessful bidder, filed two successive protests before the GAO, both of which were dismissed. The Air Force, however, decided to take corrective action by terminating DMS's contract and resoliciting the contract. DMS then filed a bid protest in the Court of Federal Claims, alleging that the proposed termination of the original contract was wrongful and that the decision to resolicit the contract was arbitrary. *Data Monitor Sys. Inc. v. United States*, 74 Fed. Cl. 66, 70 (2006). The Government argued lack of jurisdiction, one of the grounds being that the challenge to the resolicitation did not fall within the court's bid protest

---

[4] *Ceres Gulf, Inc., v. United States*, 94 Fed. Cl. 303, 316-17 (2010); *Centech Group, Inc., v. United States*, 78 Fed. Cl. 496, 506-07 (2007); *Turner Constr. Co., Inc. v. United States*, 94 Fed. Cl. 561, 583-84 (2010); *Sheridan Corp. v. United States*, 95 Fed. Cl. 141, 144, 151 (2010).

[5] *Centech Group, Inc. v. United States*, 554 F.3d 1029, 1036 (Fed. Cir. 2009); *Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 938 (Fed. Cir. 2007).

jurisdiction as stated in the Tucker Act. The court stated that the plaintiff in a bid protest must object to (1) a solicitation, (2) a proposed award, (3) an award or (4) an alleged violation of statute or regulation in connection with a procurement or a proposed procurement. The court then described the DMS's claim: "Plaintiff maintains that it is an interested party objecting to the 'award of a federal procurement contract' and 'related violation of statute or regulation in connection with the procurement.'" *Id. at 72.* After identifying what appear to be *two* grounds for bid protest jurisdiction, the *DMS* court then stated:

> Plaintiff does not, however, point to any specific statute or regulation that was violated by the Air Force's decision to resolicit the contract; rather, plaintiff contends that the entire statutory scheme that governs procurements and permits agencies to reopen discussions is violated if the agency exercises its powers arbitrarily.

*Id.* at 72-73. Thus characterized, the court found plaintiff's contention to be outside Congress' intention in enacting the Tucker Act, and it concluded: "[T]he violation claimed must be rooted in a specific statute or regulation and plaintiff alleges no such violation here." *Id.* at 73.

This Court is inclined to agree with the *DMS* court that the allegation of a violation of statute or regulation requires specificity. However, this Court disagrees that alleging a specific statutory or regulatory violation is a prerequisite for jurisdiction over a solicitation, a proposed award, or an award, if this is what the court in *DMS* intended to hold.[6]

Several Court of Federal Claims cases reject the proposition that allegation of specific statutory or regulatory violations is necessary for the court to have jurisdiction over solicitations, proposed awards or awards, as Jacobs has pointed out. The most prominent of these cases is *Centech Group, Inc. v. United States*, which was before the Court of Federal Claims and the Federal Circuit. Actually, there are three *Centech* opinions that are relevant to the case at bar. The first *Centech* opinion involved the issue of standing. In the second, the court touches upon jurisdiction in the context of discussing the standard of review of an agency's action pursuant to a GAO recommendation. Finally, there is the Federal Circuit opinion. Therefore, this Court will refer to the opinion on standing as *Centech I*, the opinion mentioning jurisdiction as *Centech II*, and the Federal Circuit opinion as *Centech III*.

*Centech* involved a challenge to an agency's *de facto* rescission of its services contract and its decision to reopen discussions and solicit revised proposals as corrective actions the agency took to implement a recommendation by the GAO. Concerning jurisdiction, the Court of Federal Claims in *Centech II* stated:

> The Court's role in a bid protest is to assess whether the agency's procurement decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in

---

[6] This Court notes that the *DMS* court went on to examine the resolicitation for arbitrariness, concluding that it was not arbitrary. *Data Monitor Sys.*, 74 Fed. Cl. at 73. Therefore, it seems that the *DMS* court was addressing only the ground of objections to violations of statute or regulation.

4

> accordance with law." The fact that an agency procurement action was taken as corrective action resulting from a GAO bid protest does not alter this landscape or immunize the agency action from judicial review. The Court of Federal Claims possesses jurisdiction to determine if a corrective action taken by an agency in response to a bid protest was reasonable under the circumstances.

79 Fed. Cl. 562, 574 (2007) (citations omitted). On appeal to the Federal Circuit (*Centech III)*, although the court did not focus on jurisdiction under the Tucker Act as an issue, it "proceeded…as though such jurisdiction exist[ed]," as Jacobs points out in its brief. Jacobs' Opp'n 7.  For example, the Federal Circuit stated: "We have stated that 'a procurement agency's decision to follow [GAO's] recommendation even though that recommendation differed from the contracting officer's initial decision was proper unless [GAO's] decision itself was irrational.'" *Centech III*, 554 F.3d 1029, 1039 (Fed. Cir. 2009) (citation omitted).

Another persuasive case is *Ceres Gulf, Inc. v. United States*, 94 Fed. Cl. 303 (2010).  In that case, Ceres Gulf, a contract awardee, filed a bid protest challenging the decision of the Army to rescind the award of the contract and to solicit revised bids as corrective action after a competing bidder had filed a prior bid protest. The Government filed a motion to dismiss, arguing that the court did not have jurisdiction under the Tucker Act. *Id.* at 307-08.  "The parties agree[d] that Ceres Gulf was not asserting a post-award bid protest or contending that the Army violated a statute or regulation in connection with the…procurement." Id. at 315.  Instead, the dispute centered on "whether Ceres Gulf's objection to the Army's corrective action should be considered a challenge to a 'solicitation by a Federal agency for bids or proposals' for purposes of the Court's pre-award bid protest jurisdiction."  In particular, the Government argued that the court did not have jurisdiction over the solicitation because Ceres Gulf did not challenge any terms in the amended solicitation nor did Ceres Gulf maintain that it was being prevented from competing for a new award. *Id.*

In a very comprehensive review of the cases and in a well-reasoned explanation, the *Ceres Gulf* court concluded that "[the Government's] narrow application of the Court's bid protest jurisdiction is contrary to established law." *Id.* at 315.  The court distinguished *DMS* on the fact that (1) it involved a termination of a contract and (2) it involved "violat[ion of] a statutory or regulatory scheme." *Id.* at 316 n.4.

This Court subscribes to the reasoning in *Ceres Gulf* and holds that this Court has jurisdiction under the Tucker Act to hear Jacobs' claims.  The disjunctive treatment of the causes of action stated in the Tucker Act is clear, and the jurisprudence of the Court of Federal Claims and the Federal Circuit over many years confirms that it is sufficient for this Court's jurisdiction that an interested party challenge a resolicitation, merely alleging that the agency was arbitrary in doing so.

**Jacobs' Claims Are Ripe For Review**

In essence, the Government argues that Jacobs' claims are not ripe for review because the agency has not made a final award. It may very well be, the Government argues, that Jacobs will be the awardee under the resolicitation.

This argument was rejected by the Court of Federal Claims in *Ceres Gulf v. United States* In this Court's judgment, the *Ceres Gulf* court thoroughly explored this point; therefore, this Court adopts *Ceres Gulf*'s reasoning and conclusion on the ripeness issue.

The court in *Ceres Gulf* begins with the classic statement on ripeness drawn from *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967): "The Court takes into account two factors when determining whether an agency action is ripe for review: (1) 'the fitness of the issues for judicial decision,' and (2) 'the hardship to the parties of withholding court consideration.'" *Ceres Gulf*, 94 Fed. Cl. at 317. Under the first factor, when considering an agency decision, as the Government rightly argues, the decision must be final. An agency's decision is considered final where "it (1) 'marks "the consummation of the agency's decision making process,"' i.e. it must not be merely tentative or interlocutory, and (2) "'the action [is] one by which rights or obligations have been determined, or from which legal consequences will flow."'" *Id.* The court further elaborated on the first factor: "The first factor thus requires the Court to consider whether further factual development would advance its ability 'to deal with the legal issues presented.'" *Id.* Next, the court elaborated on the second factor: "The second factor takes into account whether 'withholding court consideration of an action causes hardship to the plaintiff where the complained-of conduct has an "immediate and substantial impact" on the plaintiff.'" *Id.*

In this case, as in *Ceres Gulf*, the agency's decision to resolicit the contract requires Jacobs to compete again for a solicitation it had previously won. USSOCOM has effectively voided its previous decision to award the contract on the original terms to Jacobs.[7] Thus, the first factor is satisfied. As for the second factor, it is clear that Jacobs has to undergo the expense and effort of recompeting, and now it has only the *possibility* of being an awardee. Therefore, the second factor is satisfied.

Finally, as the *Ceres Gulf* court noted, "were the Court to dismiss Ceres Gulf's claims as unripe for review, its current protest grounds later could be challenged as untimely should Ceres Gulf not prevail during this second round of the procurement process," citing to the Federal Circuit case of *Blue and Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007) (*B&G*). *Ceres Gulf*, 94 Fed. Cl. at 317. The court elaborated: "[A] party must challenge an alleged impropriety in a solicitation before the closing of the bidding process in order to prevent 'waiv[ing] its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims.'"[8] *Id.*

---

[7] The fact that the agency has "stayed" the award to Jacobs has no significance in light of the fact that the agency has decided to recompete the contract on different terms. The stay is the equivalent of a de facto rescission.

[8] In its Reply, the Government notes correctly that *B&G* involved a challenge to the "terms of a government solicitation," not a more general objection based on arbitrary or capricious agency action. The issue in *B&G* was whether the objection was to the terms of the solicitation or the evaluation process once the bids were in. Having determined that the objection was to the terms, the Federal Circuit concluded that the protestor had to have made the

For the reasons stated above, this Court holds that Jacobs' claims are ripe for adjudication.

**Jacobs Has Standing**

The Government argues that Jacobs lacks standing, based on Article III of the United States Constitution and on the Tucker Act, that is, 28 U.S.C. § 1491(b)(1). The Government cites the Federal Circuit case of *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009), for this proposition. Although that case does in fact say that Article III and the Tucker Act set out standing requirements for claims such as Jacobs', the court in *Weeks Marine* (as the Government notes) declares that the Tucker Act has more stringent requirements than Article III imposes. Thus, the *Weeks Marine* court, after mentioning the requirements of Article III proceeds to discuss only the requirements of the Tucker Act, from which approach this Court infers that if the Tucker Act is satisfied so is Article III. Therefore, this Court will discuss only the standing requirements of the Tucker Act.

For standing, *Weeks Marine* holds that a plaintiff must (1) be an actual or prospective bidder and (2) possess the requisite direct economic interest. *Weeks Marine* elaborates on "direct economic" interest in the pre-award context by adopting the requirement that the bidder show a "'non-trivial competitive injury which can be addressed by judicial relief.'" *Id.* at 1362. The Government does not dispute that Jacobs is a bidder. Its argument on the second requirement—which it labels as "prejudice," Def.'s Mot. to Dismiss 21,—is that Jacobs has not been prejudiced by the agency's decision to take corrective action, because it has not lost the contract and it may retain it once the resolicitation is concluded.

Jacobs focuses on the decision of the Court of Federal Claims case in *Centech v. United States*, 78 Fed. Cl. 496 (2007), that is, *Centech I*. (The facts of the case have been recited above in the discussion on jurisdiction.) Jacobs directs this Court's attention to a lengthy quotation in *Centech I*, where the court explains why it believes that it has standing on facts that are very similar to the ones in the case at bar. First, *Centech I* holds that, although the award to the plaintiff was only "suspended," the resolicitation was a de facto rescission of the award, because, in actual effect, the protestor/plaintiff has to compete again for the award under different terms. Second, the court holds that, although the protestor may win the award under the resolicitation, it was deprived of the award that it won under the original solicitation. Therefore, the plaintiff has standing, because (1) it is a bidder and (2) it is prejudiced by the Government's de facto rescission and resolicitation.[9]

---

objection before the contract was awarded. Although the case may not apply to the circumstances in *Ceres Gulf* and the case at bar, a reasonably prudent potential protestor would be at least *in terrorem* because of *B&G*. Furthermore, the *Ceres Gulf* court merely observed that the protestor's grounds later *could* be challenged as untimely.

[9] The *Centech I* court stated: "Defendant argues that because Plaintiff continues to be the awardee it lacks standing. This characterization ignores the reality of what transpired here. While technically the [contracting agency] purported to merely 'suspend' [the protestor's] contract award, it went on to issue Amendment 3, solicit what may be substantially revised proposals from all four offerors, and impanel a completely new team to evaluate those revised proposals. . . Because [the protestor] was stripped of its status as the successful awardee *de facto* and relegated to competing anew, it does not remain the successful awardee. As such, [the protestor] clearly meets the

This Court is persuaded by the reasoning of *Centech I*. In this case, the "stay" of the award to Jacobs and the resolicitation under different terms is a de facto rescission of the award to Jacobs, forcing Jacobs to compete on different terms and depriving it of an award that it claims it already fairly won. Thus, Jacobs has suffered the prejudice that is required by the second prong of the *Weeks Marine* test. This Court, therefore, holds that Jacobs has standing.

**Agency Discretion Argument Is Not Supported**

The Government argues that this Court does not have jurisdiction over Jacobs' claims because an agency's decision to take corrective action or reconsider a matter is committed to agency discretion and is not reviewable. The cases cited as *examples* of this principle are *Interstate Commerce Commission v. Brotherhood of Locomotive Engineers* (*ICC*), 482 U.S. 270 (1987) and *Magnola Metallurgy, Inc. v. United States*, 508 F.3d 1349 (Fed. Cir. 2007) (*Magnola*). The *ICC* case has nothing to do with government contracts, and in fact, the Court held that the ICC's decision *not* to reopen a proceeding *was* reviewable by courts using the arbitrary and capricious standard. 482 U.S. at 278. *Magnola* concerned a countervailing duty on alloy magnesium imposed by the Department of Commerce. Again, the court held that the decision not to reconsider was reviewable as arbitrary or capricious. 508 F.3d at 1357. The thrust of both cases is that a court cannot review an agency decision not to reconsider based on an allegation of material error because the decision itself is reviewable on that basis.

What the Government's argument boils down to is that the agency has not yet finalized its decision-making process, which sounds like a repackaging of the ripeness argument. This Court has already addressed this argument by pointing out that the agency has in effect rescinded the award to Jacobs and compelled it to compete again on different terms. The Tucker Act gives the Court of Federal Claims jurisdiction to review a "solicitation" based on the arbitrary and capricious standard.

The Government has produced no cases on point, let alone a binding precedent, for its contention. Nor has it explained how *ICC* and *Magnola* apply to the claims currently before this Court. Therefore, the Government's "agency discretion" argument is rejected.

**Conclusion**

For the reasons set forth above, the Court **DENIES** the Government's motion to dismiss Jacobs' claims for lack of jurisdiction.

---

CICA criteria for standing: it was an actual offeror and has a direct economic interest affected by the [contracting agency's] rescission of its award and revamped solicitation effort. Although [the protestor] may have an opportunity to receive a different award under Amendment 3 and the revised criteria, this does not deprive it of standing to challenge the earlier procurement action, *i.e.*, the rescission of the award it already won under what it claims was a fair competition under the original solicitation." *Centech I*, 78 Fed. Cl. at 504

The Court does not anticipate that decisions on the remaining motions in this consolidated case will be issued by June 1, 2011.  Thus, the Court **ORDERS** the following:

1. The Government shall notify the Court by May 17, 2011, if it will extend the stay of contract award until July 1, 2011.

2. If the Government declines to extend the stay, the parties shall file their motions for preliminary injunction by May 19, 2011.

If the Government does not extend the stay of the award of the contract, the Court intends to schedule a hearing for oral argument on granting a preliminary injunction for no later than May 24, 2011.

      s/ Edward J. Damich
      EDWARD J. DAMICH
      Judge