# In the United States Court of Federal Claims

No. 11-180C
(Consolidated with Case No. 11-190C)

(Filed: May 27, 2011)
(Released for Publication:  June 7, 2011)[1]

```
*************************************
                                    *
JACOBS TECHNOLOGY INC.,             *
                                    *
                    Plaintiff,      *
                                    *
          v.                        *
                                    *
THE UNITED STATES,                  *
                                    *
                    Defendant,      *
          and                       *
                                    *
IBM GLOBAL BUSINESS SERVICES,       *
                                    *
          Defendant-Intervenor.     *
                                    *
*************************************
```

*Robert J. Symon*, Bradley Arant Boult Cummings LLP, Washington, D.C., for Jacobs Technology Inc. (Plaintiff and Defendant-Intervenor).

*K. Elizabeth Witwer*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

*Thomas P. Humphrey*, Crowell & Moring, LLP, Washington, D.C., for IBM Global Business Services (Defendant-Intervenor and Plaintiff).

---

[1]  This opinion was originally issued under seal on May 27, 2011, pending a determination among the parties whether to propose redactions of competition-sensitive, proprietary, confidential, or otherwise protected information.  The court has accepted the parties' proposed redactions, which are indicated herein in the format of three consecutive asterisks within brackets ("[***]").

## OPINION

**DAMICH**, Judge

      Before the Court in this consolidated bid protest case is the Defendant United States' (the "Government's") motion to dismiss the complaint of Plaintiff IBM Global Business Services ("IBM") for lack of jurisdiction. In brief, following a competitive procurement, the United States Special Operations Command ("USSOCOM" or the "agency") awarded Jacobs Technology Inc. ("Jacobs") an Information Technology Services Management contract.  IBM filed a bid protest on numerous grounds with the United States Government Accountability Office ("GAO"), and the agency stayed performance of the contract.  GAO sustained two grounds of IBM's bid protest and recommended that the agency issue an amendment to the solicitation and allow offerors to submit revised proposals.  The agency adopted GAO's recommendations.  Jacobs then filed a bid protest complaint in this court on March 21, 2011, challenging the agency's decision to follow GAO's recommendations.  Jacobs requests injunctive relief barring the agency from awarding the contract to anyone other than Jacobs and requests declaratory relief establishing that the contract award to Jacobs was lawful and proper.  Jacobs Technology Inc.'s Motion for Judgment on the Administrative Record 1.

      On March 25, 2011, IBM filed a bid protest complaint, subsequently amended on March 28, 2011,[2] challenging any award to Jacobs under the initial procurement on the grounds not addressed by GAO (Count I – the initial procurement) and challenging on similar grounds the amended solicitation that the agency issued in response to GAO's recommendations (Count II – the reprocurement).

      In response to IBM's Motion to Compel from Jacobs and to Supplement the Administrative Record and IBM's Motion for Judgment on the Administrative Record, the Government moved the Court to dismiss IBM's complaint.[3]  The Government urges the Court to

---

[2]  On motion by the parties, the Court consolidated the bid protest cases of Jacobs (Case No. 11-180C) and IBM (Case No. 11-190C).  Each plaintiff is also a defendant-intervenor in the other plaintiff's case.

[3]  The relevant filings in the case docket are:

  (1)  Plaintiff IBM's First Amended Complaint for Declaratory and Injunctive Relief ("IBM's Am. Compl.")(March 28, 2011)
  (2)  Plaintiff IBM's Motion for Judgment on the Administrative Record ("IBM's Mot. JAR" )(April 11, 2011)
  (3)  Plaintiff IBM's Memorandum of Points and Authorities in Support of its Motion for Judgment on the Administrative Record ("IBM's Br. Mot. JAR") (April 11, 2011)
  (4)  Defendant's Motion for Partial Dismissal and Response to Plaintiff's Motion to Compel and to Supplement the Administrative Record (for purposes of this opinion, the Court refers to Government's brief as "Def.'s Mot. Dismiss I")(April 15, 2011)
  (5)  Defendant's Motion to Dismiss, and in the Alternative, Cross-Motion for Judgment upon the Administrative Record and Response to Plaintiffs' Motions for Judgment on the Administrative Record (for purposes of this opinion, the Court refers to Government's brief as "Def.'s Mot. Dismiss II" )(April 25, 2011)
  (6)  Plaintiff IBM's Opposition to the Government's Requests for Dismissal of IBM's Action ("IBM's Opp'n")(May 2, 2011)
  (7)  Defendant's Reply to IBM Global Business Service's Opposition to Defendant's Motion to Dismiss ("Def.'s Reply Mot. Dismiss")(May 9, 2011)

dismiss IBM's Count I for lack of standing and dismiss Count II (a) because the claims are not ripe for review and (b) because IBM lacks standing.

For the reasons explained below, the Court denies the Government's motion to dismiss IBM's claims as it relates to the reprocurement (Count II) and defers judgment on the standing issue for the initial procurement (Count I).

## 1.    IBM's Claims on the Reprocurement (Count II) are Ripe for Review

The Government's argument on ripeness consists of a general contention that "the agency has reached no final decision and has made no final contract award," Def.'s Mot. Dismiss II 39, and particular contentions regarding five specific IBM claims related to: (1) a violation of the Procurement Integrity Act, (2) the agency's organizational conflict of interest analysis, (3) the appearance of impropriety, (4) demonstrated historical capability, and (5) past performance evaluation, *id.* at 38-39.

For ripeness, the Court takes into account the factors set forth in its opinion regarding the Government's motion to dismiss against Jacobs.  The Court considers (1) whether the agency's decision was final, (2) the hardship to the plaintiff if court consideration is withheld, and (3) whether the protestor's grounds later could be challenged as untimely.  Opinion and Order, 6, 6 n.8, May 16, 2011, ECF No. 80 (citing *Ceres Gulf, Inc. v. United States*, 94 Fed. Cl. 303 (2010)). The first two factors—a final decision and plaintiff's hardship—are drawn from *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967) ("the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration").  The third factor is derived from *Blue and Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007) ("*B&G*") as the *Ceres Gulf* court noted:  "[A] party must challenge an alleged impropriety in a solicitation before the closing of the bidding process in order to prevent 'waiv[ing] its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims.'" *Ceres Gulf*, 94 Fed. Cl. at 317 (quoting *B&G*, 492 F.3d at 1313).[4]

Although there is a possibility that IBM may be awarded the contract as a result of the reprocurement, this fact does not make IBM's claim unripe.  As discussed below, this is a pre-award bid protest in which IBM is alleging flaws in the reprocurement process.  The reprocurement process is virtually complete.[5]  There is no indication that the flaws IBM complains of will be recognized and remedied by the agency.  The mere fact that an agency may always amend the Request for Proposal ("RFP") cannot render pre-award bid protests unripe. This proposition would logically negate pre-award bid protests entirely.  The only case cited by the Government in the context of its general contention is *Eskridge Research Corp.  v. United States*, 92 Fed. Cl. 88 (2010).  As discussed in detail below, this case is not apt.  IBM has alleged

---

[4]  Although *B&G* deals with a protestor's objections to terms of the solicitation, this Court suggests that it raises legitimate concerns for prudent protestors challenging the solicitation process or the evaluation of offerors' proposals.

[5]  The agency has received the offerors' proposals in response to the resolicitation, Decl. Dr. Joseph R. Daum ¶ 3, May 9, 2011, ECF No. 65-1, and the agency has agreed to extend the stay of the contract award until July 1, 2011, Def.'s Notice of Intent to Stay Contract Award, May 17, 2011, ECF No. 70.

that it is harmed by the participation of Jacobs in the reprocurement.  Finally, this Court may enjoin the reprocurement.  28 U.S.C. § 1491(b)(2).

In discussing the Government's particular contentions, the Court finds it logical to group (1) and (2) together and to group (4) and (5) together.  As the Government has not developed particular contention (3), the Court will not discuss it.

### a.    Procurement Integrity Act (PIA) and Organizational Conflict of Interest (OCI)

Essentially, the Government argues that, since an award has not been made in the reprocurement, the agency still has time to conduct a PIA investigation and an OCI analysis, if it wants to.  IBM, however, points out that there has been no indication on the part of the agency since the corrective action was taken that it intends to conduct a PIA investigation or perform an OCI analysis.  Next, IBM notes that its protest is *pre-award* and that its protest is based on a flawed resolicitation.  Thus, all that should be necessary is that there be a solicitation and that there be an allegation of an impropriety in it.  Then, IBM reminds the Court that its goal in getting the agency to conduct a PIA investigation and to perform an OCI analysis is to disqualify Jacobs from participating in the reprocurement.  As the agency has permitted Jacobs to participate in the reprocurement, it may be argued that the agency has tacitly decided against conducting a PIA investigation and performing an OCI analysis.  IBM bolsters this argument—in the case of the OCI, IBM's Opp'n 7,—by citing FAR 9.504(a)(1), which requires the Contracting Officer to "[i]dentify and evaluate potential organizational conflicts of interest as early in the acquisition process as possible."   Further support of the inference of a tacit decision is the fact that the OCI issue was before the GAO and was addressed in its opinion.[6]  AR 33850-53. Finally, IBM fears dismissal if it does not protest Jacob's eligibility to submit proposals at this time.  In fact, IBM informs the Court, USSOCOM argued in the GAO that IBM's protest on this score should have been dismissed because IBM did not challenge Jacobs' eligibility before the due date for submission of proposals.  IBM's Opp'n 7.  Although the Government contends that GAO has a different rule with regard to ripeness and pre-award OCI challenges, Def.'s Mot. Dismiss II 6, this does not negate IBM's legitimate concern for a later challenge and dismissal on timeliness.

Insofar as this Court may hear pre-award bid protests, it stands to reason that, in general, all that is necessary for ripeness is a solicitation and an allegation of an impropriety.  For example, a claim of a flawed term of an RFP by a bidder would be ripe for review.  And this is surely the case even when the agency can amend the solicitation.  Otherwise, there would be no pre-award bid protest cases, as the agency has the possibility of amending up to the time of the award.  When, however, it is a case of agency *action* (as contrasted with a stated term), especially when the alleged flaw is agency *inaction*, the question becomes more difficult to answer.  The first impulse is to discern a deadline for agency action.  In the case of an OCI, IBM can plausibly point to the exhortation in FAR 9.504(a)(1).  Clearly, USSOCOM has not decided to perform the OCI analysis "as early…as possible."  This fact, combined with its silence about

---

[6] GAO found from its review of the record that the agency "conducted an extensive investigation into any potential OCI."  AR 33852.

conducting such an analysis, leads the Court to conclude that USSOCOM has decided that it is not necessary to conduct an OCI analysis.  For purposes of ripeness, it is not necessary for the possibility of performing an action to be extinguished.  As the Court has already observed, the power to amend a solicitation does not mean that an allegation of a flaw in an existing term of a solicitation is not ripe for challenge.  All that is necessary is that a decision can reasonably be inferred.

     *Eskridge Research Corp. v. United States*, 92 Fed. Cl. 88 (2010), a case relied upon by the Government, does not conflict with this principle.  In *Eskridge*, the plaintiff's *post-award* protest was based on a defect in evaluation.  The protestor first filed with the GAO.  In response to the filing, the agency issued a notice of Corrective Action, announcing that it would reevaluate.  The court noted that "[i]n the present action, [Eskridge] alleges… that [the agency's] *initial* evaluation…[was] unreasonable" (emphasis added). *Id.* at 93.  There is no indication in the opinion that the protestor objected to the reevaluation.  As the reevaluation was on-going when the protest was filed in the Court of Federal Claims, the court (naturally) held that the protest was not ripe; indeed, it held that it was moot.[7]  In the case at bar, the protest is a pre-award bid protest against announced corrective action that does *not* include an action that the protestor argues is necessary for a proper reprocurement. The cases are quite different.

     This Court, therefore, concludes that IBM's OCI claim is ripe for review.  All the bids are in.  The agency is poised to make the award.  The GAO did not recommend that the agency perform an OCI analysis.  There is no indication that it is going to perform such an analysis.  The FAR contemplates an OCI analysis as early as possible in a procurement.  IBM claims that, if USSOCOM conducted an OCI analysis, Jacobs would be disqualified.  Such a disqualification would surely enhance IBM's chances of obtaining the award.

     The PIA investigation claim is more difficult, as the Court does not have the benefit of a FAR provision drawing its attention to the early stages of a procurement.  The facts, however, are similar: (1) the agency has received all the proposals that it is going to get, (2) Jacobs has been allowed to bid on the RFP, and (3) the very reason why the agency would conduct a PIA investigation would be to determine if Jacobs should be disqualified.  Under these circumstances, it is reasonable to conclude that USSOCOM has made the decision not to conduct a PIA investigation.  Therefore, IBM's claim that the resolicitation is flawed because the agency did not conduct a PIA investigation that might have disqualified Jacobs is ripe for review.  The Court, however, hastens to add that determining that IBM's PIA and OCI claims are ripe for adjudication does not mean that the Court believes that the decision not to conduct a PIA investigation or not to perform an OCI analysis is arbitrary or capricious.

---

[7]  "[B]ecause the agency has already agreed to re-evaluate the proposals, the plaintiff's claims regarding [the agency's] original evaluation of proposals…must be dismissed as moot."  *Eskridge*, 92 Fed. Cl. at 94.

**b.      Demonstrated Historical Capability and Past Performance Evaluation**

Essentially, IBM alleges that USSOCOM has tailored the revised RFP for Jacobs' benefit by making evaluation of demonstrated historical capability optional,[8] IBM's Br. Mot. JAR 39, and by not performing a new past performance evaluation, *id.* at 45.  The Government argues that this allegation is not ripe for review because IBM may still get the contract and that IBM is not prejudiced, and therefore not harmed, by USSOCOM's actions regarding demonstrated historical capability and past performance.  Def.'s Mot. Dismiss II 40.

As this Court has already observed, this is a pre-award bid protest in which IBM is alleging that the revised RFP is flawed.  The fact that IBM has the possibility of being the awardee nonetheless does not mean that it must participate in a procurement that it believes that it can show is improper.  As IBM points out, if this were so the jurisdiction over pre-award bid protests would be meaningless.

Regarding prejudice, IBM has alleged that the agency's decisions regarding demonstrated historical capability and past performance have skewed the reprocurement in Jacobs' favor.  This is not a bald assertion.  IBM raised the issue of failure to evaluate demonstrated historical capability before the GAO.  IBM won its protest there, although the GAO did not make a decision on that allegation.  But the GAO did not recommend removal of this criterion from the RFP.  IBM alleges that it would do better than Jacobs on this criterion.

IBM argues that USSOCOM gave Jacobs the highest possible performance rating despite [***].  IBM's Br. Mot. JAR 42.  Again, although IBM raised this issue before the GAO, the GAO did not reach the merits of IBM's argument in this regard.  IBM, of course, would benefit by a lower past performance rating for Jacobs by the enhancement of its chances of obtaining the award of the contract under the reprocurement.

Ripeness is not a high threshold.  The court does not have to believe that the protestor's challenges are likely to succeed.  All that is necessary is that the issues are fit for judicial resolution and that there has been a showing of prejudice.  USSOCOM has "decided" not to require evaluation of demonstrated historical capability and not to reevaluate past performance.  Whether the agency acted properly in doing so is an issue fit for judicial resolution.  Furthermore, IBM has indicated a plausible case for prejudice.  Therefore, USSOCOM's decisions on these two matters are ripe for review.

**2.      IBM Has Standing for its Reprocurement Claims (Count II)**

The Government argues that IBM lacks standing for its reprocurement claims, citing Article III of the U.S. Constitution and the Tucker Act, 28 U.S.C. § 1491(b)(1).  It points to *Weeks Marine, Inc. v. United States,* 575 F.3d 1352 (Fed. Cir. 2009), for the proposition that standing must be judged both under Article III and also under the Tucker Act.  Def.'s Mot. Dismiss II 41.  *Weeks Marine* does not precisely say that.  What it says is that the Article III

---

[8]  IBM avers that USSOCOM removed the requirement to evaluate demonstrated historical capability from the revised RFP and then reinstated evaluation of demonstrated historical capability in the revised RFP but made it optional. IBM's Br. Mot. JAR 39.

standing requirements are binding on the Court of Federal Claims and that so are the standing requirements of the Tucker Act. *Weeks Marine*, 575 F.3d at 1359. The court also observed that the Tucker Act has even more stringent standing requirements than does Article III. *Id.* The *Weeks Marine* court, then—in the context of a bid protest—did not perform any analysis under Article III, but, instead, proceeded to analyze the standing issue only under the Tucker Act. Thus, this Court concludes, as it did in its opinion regarding the Government's motion to dismiss against Jacobs, that, since the Tucker Act has even more stringent requirements on standing than Article III, it is sufficient to decide the issue of standing with reference only to the Tucker Act. In other words, the Article III standing requirements are subsumed under the Tucker Act requirements.

As the Government notes, *Weeks Marine* held that to have standing the plaintiff must (1) be an actual or prospective bidder and (2) possess the requisite direct economic interest. *Id.* The Government concedes that IBM is an actual or prospective bidder; therefore, the issue is one of direct economic interest. Def.'s Mot. Dismiss II 43. *Weeks Marine* elaborates on this concept. It says that the bidder must have a "substantial chance" of receiving the contract. *Weeks Marine*, 575 F.3d at 1359. In the context of a pre-award bid protest, the *Weeks Marine* court stated that the bidder must demonstrate a "non-trivial competitive injury which can be addressed by judicial relief." *Id.* at 1362.

In its opening brief, the Government attacks IBM's standing with reference to four claims concerning: (1) the Procurement Integrity Act (PIA), (2) organizational conflicts of interest (OCI), (3) demonstrated historical capability, and (4) reevaluation of past performance. In its discussion, however, the Government groups together claims (1) and (2) and claims (3) and (4).

### a.   IBM Has Standing to Bring Its Procurement Integrity Act and Organizational Conflicts of Interest Claims

The Government argues simply that IBM would be harmed only if the contract is awarded to Jacobs and there is a violation of the PIA or the agency fails to conduct a proper OCI analysis. Def.'s Mot. Dismiss II 43. In opposition, IBM points to *Weeks Marine*, which involved a plaintiff who was merely a prospective bidder, and thus, only had a chance of winning a contract award. IBM's Opp'n 21. Nevertheless, the court stated that Weeks had a "definite economic stake in the solicitation being carried out in accordance with applicable laws and regulations." *Weeks Marine*, 575 F.3d at 1362. In view of that, the *Weeks Marine* court noted that if Weeks was able to prove its alleged violation, then the entire solicitation could have eventually been overturned due to illegality. *Id.* In this case**,** IBM similarly points out that if its concerns regarding PIA and OCI are not addressed, the procurement could later be challenged for illegality. Furthermore, IBM believes that it is presently not competing on a level playing field, because Jacobs allegedly has nonpublic information that assisted it in preparing its proposal. IBM's Opp'n 21.

The Court is persuaded by IBM's arguments. The protestor in *Weeks Marine* was a prospective bidder in a procurement that had not yet resulted in a contract award. IBM is an actual bidder prior to the contract award. Weeks alleged violations of statutes and regulations that it claims would put it at a competitive disadvantage. So does IBM.

### b.     IBM Has Standing to Bring Its Demonstrated Historical Capability and Reevaluation of Past Performance Claims

Again, the Government simply argues that IBM may still be awarded the contract.  Def.'s Mot. Dismiss II 43.  In opposition, IBM reiterates the substance of its claims: (1) the agency deleted demonstrated historical capacity from the revised RFP in order to favor Jacobs and (2) the agency decided not to reevaluate past performance in light of the agency's flawed original evaluation. [9]  IBM's Opp'n 21-22.  IBM does not elaborate on these facts, perhaps because it is obvious that if these allegations are true, then IBM is at a competitive disadvantage in the reprocurement.  The Court concludes that this is the case, that is, that IBM has established the non-trivial competitive injury required by *Weeks Marine*.

### 3.     IBM's Standing to Challenge the Initial Procurement (Count I) is Deferred

The parties' briefs on IBM's standing to challenge the initial procurement lack clarity and precision.  There appear to be two embedded questions in the parties' discussions:  (1) Whether IBM has standing for its claim that "Any Award by USSOCOM to Jacobs Under the Initial Solicitation (Prior to the Corrective Action Amendments) Would Be Unlawful and Improper," IBM's Compl. at 24, (i.e., to raise claims as alternative defenses to the Jacobs' action), IBM's Opp'n 16,  or (2) whether IBM has standing to bring its motion for judgment on the administrative record insofar as it opposes an award to Jacobs under the initial procurement "for reasons in addition to those on which [GAO] invalidated the award to Jacobs."  IBM's Br. Mot. JAR 1.  The Court is not sure of the Government's arguments on the first question; but surely, IBM can *defend* Jacobs' attempt to have its award reinstated.  Therefore, it would seem that the standing issue centers on IBM's motion, which involves grounds against award to Jacobs under the initial procurement that were not included in the GAO decision.  Assuming that this is the case, the standing issue would be moot if the Court denies Jacobs' motion for reinstatement.  Therefore, rather than ask the parties for supplemental briefing (given the desire for expedition), the Court, in the interests of judicial economy, postpones its decision on this aspect of the Government's motion.  If the Court should grant Jacobs' motion for reinstatement based upon the issues decided by GAO, fuller briefing on the initial procurement standing issue will be in order because IBM has raised alternative grounds to invalidate the award to Jacobs.  In this event, the Court will stay its decision on granting the declaratory and injunctive relief sought by Jacobs until IBM's standing is determined.

---

[9]  According to IBM, in the original solicitation, the agency passed over some adverse information regarding Jacobs' performance.  IBM's Br. Mot. JAR 42.

**Conclusion**

For the reasons set forth above, the Government's motion to dismiss Count II of IBM's complaint, regarding the reprocurement, is denied.  The Court reserves judgment on jurisdiction with regard to Count I—the initial procurement.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge