# In the United States Court of Federal Claims

No. 11-180C
(Consolidated with Case No. 11-190C)

(Filed:  June 8, 2011)
(Released for Publication:  June 23, 2011)[1]

```
**************************************
                                     *
JACOBS TECHNOLOGY INC.,              *
                                     *
                        Plaintiff,   *
                                     *
           v.                        *
                                     *
THE UNITED STATES,                   *
                                     *
                        Defendant,   *
           and                       *
                                     *
IBM GLOBAL BUSINESS SERVICES,        *
                                     *
              Defendant-Intervenor.  *
                                     *
**************************************
```

*Robert J. Symon*, Bradley Arant Boult Cummings LLP, Washington, D.C., for Jacobs Technology Inc. (Plaintiff and Defendant-Intervenor).

*K. Elizabeth Witwer*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

*Thomas P. Humphrey*, Crowell & Moring, LLP, Washington, D.C., for IBM Global Business Services (Defendant-Intervenor and Plaintiff).

---

[1]  This opinion was originally issued under seal on June 8, 2011, pending a determination among the parties whether to propose redactions of competition-sensitive, proprietary, confidential, or otherwise protected information.  The Court has accepted the parties' proposed redactions, which are indicated herein in the format of three consecutive asterisks within brackets ("[***]").

<u>**OPINION**</u>

**DAMICH**, Judge

Before the Court in this consolidated bid protest case is the Plaintiff Jacobs Technology Inc.'s ("Jacobs'") motion for judgment on the administrative record, and cross-motions for judgment on the administrative record by Defendant United States (the "Government") and Defendant-Intervenor IBM Global Business Services ("IBM").

For the reasons explained below, Jacobs' motion for judgment on the administrative record is denied. The Government's and IBM's cross-motions for judgment on the administrative record are granted.

## I.    BACKGROUND

The Department of Defense United States Special Operations Command ("USSOCOM" or "agency") established a service management and delivery framework—Special Operations Forces Information Technology Enterprise Contracts ("SITEC")—to achieve its vision for a worldwide technology infrastructure. USSOCOM intends to migrate various information technology services from the existing Enterprise Information Technology Contract (EITC) to new service providers acquired through SITEC. AR 804. The Information Technology Service Management ("ITSM") contract, at issue in this case, is the first of a series of service contracts to be awarded as part of SITEC. AR 803, 805. The ITSM service area, which includes the Information Technology Management Office ("ITMO"), provides the overall management of the information technology service providers and the integration of USSOCOM's worldwide information technology infrastructure and operations. AR 803.

### A.    Initial Procurement for ITSM

On May 27, 2010, USSOCOM issued a final request for proposals ("RFP") for ITSM services. AR 700. Under the RFP, The ITSM Contractor is expected to support the ITMO (1) "in establishing and maintaining enterprise-level standardized [information technology ("IT")] processes and methodologies that align with the industry standard IT Service Management framework," (2) in transitioning from the EITC to the new service providers, and (3) in the "integration, coordination, and ongoing management of the service delivery activities of the collective set of IT service providers." AR 804.

The RFP set forth the criteria that USSOCOM would use in the evaluation of offerors' proposals and its source selection decision. First the agency would evaluate proposals under several pass/fail qualifying criteria, and then evaluate the proposals based on technical/management, past performance, and cost/price. AR 794-799. The technical/management and cost/price evaluation factors are pertinent to the instant motion before the Court.

For the Technical/Management Factor (Section M.1.4):

> the Government will evaluate the Offeror's overall approach and expressed
> capabilities for providing the IT service management and integration services
> across all IT Service Areas, as well as its ability to manage the day-to-day
> operations delivery and support the IT services environment for each individual
> IT Service Area.  Evaluation of this factor shall focus on the strengths,
> weaknesses, and risks of the Offeror's proposal, as well as demonstrated historical
> capability of engagements of similar size and complexity.

AR 795.

The RFP specified nine subfactors under the Technical/Management Factor.  AR 796-97.
Jacobs points to two of the nine subfactors as relevant to its bid protest:  (1) Operational
Integration and Integration Approach and (9) Transition Planning.

With respect to cost/price, the agency would evaluate the offerors' proposals based on
Probable Cost and assess for reasonableness under Federal Acquisition Regulations (FAR).  AR
798.  The Probable Cost would be determined by USSOCOM in part based on the offerors'
proposed unit prices and the agency's estimate of the quantity of users.  Id.

Two aspects of the RFP process are particular focal points in the motions before the
Court: (1) service desk support and (2) full operating capability.

The RFP indicated that offerors were required to provide per month per user prices for
three different levels of service for IT service desk support—bronze, silver and gold levels.  The
RFP provided annual maximum quantities for each service level.  USSOCOM provided
historical information on the total number of users on a monthly basis and indicated that offerors
were expected to "use that data along with their experience with similar efforts to develop an
estimate of the effort required for the service desk effort."  AR 1038.  The offerors were then
only to provide unit prices for each level; the agency would evaluate offerors' cost based on its
estimate of the number of monthly users by level.

Although not stated in the RFP as such, full operating capability surfaced as an
evaluation factor. USSOCOM's Source Selection Authority ("SSA") evaluated the proposals[2]
based on a trade-off analysis and determined that Jacobs' offer represented the best value to the
government.  AR 4284.  In comparing the IBM and Jacobs proposals, the ratings for Jacobs for
technical/management and past performance were higher than IBM.  AR 4283.  The SSA stated
that "[a]lthough IBM's [Most Probable Cost] is lower than Jacobs', the Jacobs' proposal
included substantial benefits to the Government that merit the additional cost."  Id.  The benefits
noted by the SSA included, inter alia, Jacobs' ability to achieve full operating capability [***].
AR 4283-84.  Following the evaluation of the offerors and the source selection decision,
USSOCOM awarded the ITSM contract to Jacobs.

---

[2]  USSOCOM received proposals from Jacobs, IBM, and three other offerors.

IBM filed a bid protest on numerous grounds with the United States General Accountability Office ("GAO"), and the agency stayed performance of the contract. GAO sustained two grounds of IBM's bid protest, concluding (1) that the agency evaluated proposals using an unstated evaluation factor, and (2) that the offerors did not have adequate information to compete on a relatively equal basis. GAO recommended that the agency issue an amendment to the solicitation and provide all offerors the opportunity to submit revised proposals. AR 33853. Specifically, GAO recommended that the RFP be amended to include information relating to the agency's requirement for full operating capability and information with respect to service desk user requirements that would be used for cost evaluation purposes. *Id.*

USSOCOM adopted GAO's recommendations and amended the solicitation to include, inter alia, information related to the agency's full operating capability requirements and service desk user requirements. AR 33165.

## B.    Procedural History

On March 21, 2011, Jacobs filed a bid protest in this court challenging the agency's decision to follow GAO's recommendations.[3]   On April 11, 2011, Jacobs filed a motion for judgment on the administrative record. In response, the Government filed a motion to dismiss, and, in the alternative, a cross-motion for judgment on the administrative record. IBM, as defendant-intervenor, also filed a response and cross-motion for judgment on the administrative record.[4]

---

[3]  IBM filed its bid protest complaint on March 25, subsequently amended on March 28, 2011, challenging both the initial procurement (on the grounds not addressed by GAO) and challenging the amended solicitation that the agency issued in response to GAO's recommendations. On motion by the parties, the Court consolidated the bid protest cases of Jacobs (Case No. 11-180C) and IBM (Case No. 11-190C). Each plaintiff is also a defendant-intervenor in the other plaintiff's case.

[4]  The relevant filings in the case docket are:

(1)  Plaintiff Jacobs Technology Inc.'s Complaint ("Jacobs' Compl.")(March 21, 2011)
(2)  Plaintiff Jacobs Technology Inc.'s' Motion for Judgment on the Administrative Record ("Jacobs' Mot. JAR")(April 11, 2011)
(3)  Plaintiff Jacobs Technology Inc.'s Statement of Facts and Brief in Support of Its Motion for Judgment on the Administrative Record)("Jacobs' Br. Mot. JAR")(April 11, 2011)
(4)  Defendant's Motion to Dismiss, and, in the Alternative, Cross-Motion for Judgment upon the Administrative Record and Response to Plaintiffs' Motions for Judgment on the Administrative Record ("Def.'s Resp. & Cross-Motion" )(April 25, 2011)
(5)  Defendant-Intervenor IBM's Opposition to Jacobs' Motion for Judgment on the Administrative Record and Cross-Motion for Judgment on the Administrative Record in the Jacobs Action ("IBM's Resp. & Cross-Motion")(April 25, 2011)
(6)  Plaintiff Jacobs' Opposition to IBM Global Business Services' and the United States' Cross-Motions for Judgment on the Administrative Record and Reply Brief in Support of its Motion for Judgment on the Administrative Record ("Jacobs' Resp. & Reply")(May 2, 2011)
(7)  Defendant's Reply in Support of Its Cross-Motion for Judgment Upon the Administrative Record in the Protest Brought by Jacobs Technology Inc. (11-180C) ("Def.'s Reply")(May 9, 2011)
(8)  Defendant-Intervenor IBM's Reply in Support of its Cross-Motion for Judgment on the Administrative Record in the Jacobs Action ("IBM's Reply")(May 9, 2011)

With respect to the Government's motion to dismiss, in the May 16, 2011 Opinion and Order, the Court denied the Government's motion and held that (1) this Court has jurisdiction over Jacobs' claims pursuant to the Tucker Act, 28 U.S.C. 1491(b)(1); (2) Jacobs' claims are ripe for review; and (3) Jacobs has standing. *Jacobs Technology Inc. v. United States*, Nos. 11-180C, 11-190C, 2011 WL 2044581 (Fed. Cl. May 16, 2011).

Jacobs seeks declaratory judgment that USSOCOM's award to Jacobs was proper and in accordance with federal laws and regulations, and seeks a permanent injunction enjoining USSOCOM from proceeding in any action to award a contract to any other party.

## II.     DISCUSSION

### A.     Standard of Review

In a bid protest action, the court reviews an agency's procurement actions under the standards set forth in the Administrative Procedures Act (APA), 5 U.S.C. § 706.  28 U.S.C. § 1491(b)(4); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001).  Under the APA, the court determines, based on a review of the record, whether the agency's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Thus, an agency's procurement decision may be set aside if the decision lacked a rational basis or the agency violated a procurement regulation or procedure.  *Impresa*, 238 F.3d at 1332.  If the court determines that the agency's action lacked a rational basis or was contrary to law, "then it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct."  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005).

Contracting officers are entitled to broad discretion in the procurement process, *Impresa*, 238 F.3d at 1332, including in their decisions to take corrective action.  An agency's decision to take corrective action, as here, may be based upon GAO's recommended actions arising from improprieties with the agency's procurement.  As the Federal Circuit held in *Honeywell*, the agency's decision to adopt GAO's recommendation is rational if the court determines that GAO's recommendation had a rational basis. *Honeywell v. United States*, 870 F.2d 644, 647 (Fed. Cir. 1989).  According to *Honeywell*, the court must give appropriate deference to GAO's decision and not undertake a *de novo* review of the issues decided by GAO. *Id.* at 647, 649.  Thus, the analysis of this Court is not whether a review of the record would support a different conclusion, but whether GAO's decision was rational.  *See id.* at 647.

The court's review of GAO's decision is necessarily a limited one.  First, the court has jurisdiction to review an agency's procurement action, *see* 28 U.S.C. § 1491(b)(1); the court does not review GAO's decision as if it were a decision of a lower court subject to appellate review. Second, the review of GAO's decision is only in the context of the agency's decision to take corrective action for a procurement issue that was the subject of GAO's decision.  Thus, the focus of this Court is on the procurement issue—whether GAO's determination of the

impropriety of the agency's procurement decision and the resulting recommended action were reasonable under the circumstances.[5]

Where the parties have filed cross-motions for judgment on the administrative record, as here, Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC") provides a procedure for parties to seek the equivalent of an expedited trial on a "paper record, allowing fact-finding by the trial court." *Bannum,* 404 F.3d at 1356. Unlike summary judgment standards, genuine issues of material fact do not preclude a judgment on the administrative record. *See id.* at 1355-56. Questions of fact are resolved by reference to the administrative record. *Id.* at 1356.

## B.     Rationality of USSOCOM's Corrective Action

Jacobs claims that USSOCOM's decision to adopt GAO's recommendations was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law because GAO's recommendation was irrational and clearly erroneous. Specifically, Jacobs calls into question two GAO decisions arising from IBM's bid protest: (1) that the agency improperly applied an unstated evaluation criteria, and (2) that the agency failed to provide information to allow offerors to compete on a relatively equal basis.

### 1.     Improper Application of an Unstated Evaluation Factor

IBM alleged in its GAO bid protest that USSOCOM evaluated proposals using an unstated evaluation factor—an offeror's ability to achieve full operating capability [***]. IBM also asserted that the agency improperly credited Jacobs, but did not credit IBM, for its [***] achievement of full operating capability.

GAO observed that, as a general rule, "agencies are required to advise offerors of the evaluation criteria against which proposals will be evaluated." AR 33844. GAO elaborated: "Although agencies are not required to identify each and every element encompassed within the solicitation's evaluation scheme, unstated evaluation considerations must reasonably be subsumed within the stated considerations," citing *Mnemonics, Inc.*, B-290961, Oct. 28, 2002, 2003 CPD ¶ 39 at 6.

---

[5]  Jacobs emphasizes, throughout its brief, decisions of the Court of Federal Claims in what appears to be an attempt to refine the standard of review that this Court should apply. These cases are not binding on this Court. These cases will inform this Court's judgment, but they will not direct it. The Court of Federal Claims cases cited by the parties for determining whether GAO's decision had a rational basis include, inter alia, the following:  *Firth Construction Co. v. United States*, 36 Fed. Cl. 268, 272, 275 (1996) ("to the extent that [GAO's] analysis can be followed and to the extent that GAO's decision expresses a principle that can be applied elsewhere," and if there are no clear errors of law that are "not subject to reasonable disagreement over interpretation"); *Lyons Security Services, Inc. v. United States*, 38 Fed. Cl. 783, 786 (1997) (the extent that the decision is not inconsistent with GAO precedent); and *Grunley Walsh International, LLC v. United States*, 78 Fed. Cl. 35, 44 (2007) (whether GAO's recommendation is contrary to a statutory requirement). In addition, Jacobs suggests that GAO's recommendation is irrational if:  (1) GAO has not fully addressed an issue (interpreting *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 636 n.3 (2003)) and (2) if GAO has failed to "meaningfully engage" with the agency decision and the record (interpreting *Turner Construction Co., Inc. v. United States*, 94 Fed. Cl. 561, 580 (2010)). Jacobs' Br. Mot. JAR 18.

GAO sustained IBM's bid protest on these principles and concluded (1) that the RFP did not provide for the evaluation of offerors on the basis of achieving full operating capability [***] and (2) that USSOCOM gave significant consideration to Jacobs' achievement in its evaluation and source selection decision.  AR 33845.  GAO recommended that USSOCOM amend the RFP "to provide all offerors the same information relating to the agency's requirement for [full operating capability] and the schedule therefore." AR 33853.

The parties agree that full operating capability [***] was not a stated evaluation factor in the RFP.  The parties, however, dispute whether it was an unstated evaluation factor, and if an unstated factor, whether it was reasonably subsumed within stated evaluation criteria.[6]  The Court notes that there is a more practicable formulation also found in *Mnemonics*, namely, that an unstated evaluation factor is not "reasonably subsumed" within the stated factors when "nothing in the solicitation's stated requirements reasonably put offerors on notice" of an evaluation factor.  *Mnemonics,* B-290961 at 6.  Thus, in judging whether the GAO acted rationally in applying the "reasonably subsumed" test, the Court will be aided by the "reasonable notice" formulation.

### a.    GAO's Decision

GAO essentially concluded that the RFP did not provide reasonable notification to the offerors that their proposals would be evaluated on the basis of [***] achievement of full operating capability.  GAO determined that full operating capability was not defined in the RFP, that the RFP did not contain any schedule requirement for achieving full operating capability by a specific date, and that the RFP did not provide that offerors' proposals would be evaluated relative to that schedule.  GAO acknowledged that the agency referenced full operating capability and a timeframe for achieving it in an industry briefing, but found that the information was not included in the subsequently released RFP.[7]  AR 33845.

Despite the silence of the RFP on full operating capability, GAO noted that USSOCOM gave credit to Jacobs for achieving full operating capability under the "Operational Integration and Integration Approach" Subfactor (Subfactor 1 of the Technical/Management Factor).[8]  AR 33844.  Under this subfactor, the agency would consider the offerors' approaches to supporting the agency's information technology operations and its strategy for assisting the agency in

---

[6]  Jacobs essentially contends that GAO's decision was irrational because it failed to consider certain information and failed to support its conclusions in determining whether there was an unstated evaluation criterion and whether it was reasonably subsumed within a stated evaluation factor.  The Government and IBM argue that GAO's decision had a rational basis, that simply not discussing the issues raised by Jacobs does not render GAO's decision irrational, and that Jacobs detailed critique of GAO's analysis deviates from the standard of review that this Court is required to apply.

[7]  Before the final RFP was issued, USSOCOM indicated in a presentation that its Information Technology Management Office ("ITMO") was to provide Information Technology Infrastructure Library expertise with Initial Operating Capability (IOC) by April 1, 2011, and Full Operating Capability by April 1, 2013.  AR 506.  The agency also indicated that one of the primary roles of the contractor is to support the ITMO transition "from Initial Operating Capability to Full Operating Capability to Target Operating Capability."  AR 511.

[8]  The agency referenced Subfactor 1 when it acknowledged that Jacobs would "reach [full operating capability] process maturity in [***].  AR 4167.

establishing an Information Technology Management Office. The RFP specified that the agency would evaluate how the offeror intends to ensure integration. GAO, however, did not find that this subfactor reasonably notified offerors that their proposals would be evaluated based on [***] of full operating capability relative to a target date.

GAO also made several findings with regard to the agency's technical evaluation and its source selection decision. GAO determined that achieving full operating capability on an [***] "was a prominent consideration in the agency's evaluation of the Jacobs proposal as well as in its source selection decision." AR 33845. GAO established that "the evaluators and [source selection authority] acted on the assumption that there was a schedule for implementing [full operating capability] included in the RFP," even though the RFP did not define or establish a schedule for full operating capability. AR 33846. GAO also recognized that Jacobs' [***] achievement of full operating capability [***] was a "principal technical discriminator between the IBM and Jacobs proposals." *Id.*

Thus, GAO found that the RFP did not provide for evaluation of full operating capability [***] and that the agency improperly applied this unstated evaluation factor in its evaluation and source selection decision.

### b.    Rationality of GAO's Decision

The role of this Court is not to second guess GAO's decision; the Court only determines whether GAO's decision was rational. *Honeywell*, 870 F.2d at 647. Based on GAO's findings, which are supported by the record, the Court determines that it was rational to conclude that the RFP did not reasonably notify offerors that the evaluation criteria would include an offeror's ability to achieve full operating capability [***]. The RFP did not define full operating capability and did not establish a schedule for achieving it. In addition, the RFP did not provide that offerors' proposals would be evaluated against a specified timeframe.

Although some offerors might hit on a connection between full operating capability and the assessment under Subfactor 1, which was to be based on the offeror's *approach* and *strategy*, and *how* the integration would be achieved, GAO did not act irrationally in concluding that achieving full operating capability [***] was not reasonably subsumed within stated evaluation criteria. Jacobs appears to challenge the rationality of this conclusion by arguing that GAO failed to consider that an offeror's approach and strategy may lead to achieving or exceeding the agency's requirements, and that those results would clearly be part of the evaluation scheme. *See* Jacobs' Br. Mot. JAR 20-21; Jacobs' Resp. & Reply 11-12. However, the fact that Subfactor 1 provided an opportunity to demonstrate full operating capability by a target date or [***] does not mean that it included this criterion. Therefore, it is reasonable to conclude that the RFP does not reasonably notify offerors of the requirements or the evaluation factor. It follows, then, that GAO rationally concluded that achieving full operating capability was an "unstated" evaluation factor.

The Court comes to this conclusion, despite the fact that (as Jacobs points out) IBM asserted that its proposal achieved full operating capability [***]. *See* Jacobs' Br. Mot. JAR 23. IBM's assertion by itself, however, does not show that IBM reasonably understood what full

operating capability meant or that achieving full operating capability on an [***] would be an evaluation factor.[9]  Furthermore, USSOCOM did not recognize IBM's achievement of full operating capability in the technical evaluation as it did for Jacobs and one other offeror.[10]  AR 4162, 4167, 4183, 4190.  As GAO noted, "the agency and IBM disagree[d] concerning what constitutes [full operating capability] and whether or not IBM proposed to achieve it by a certain point in time."  AR 33846.  GAO rationally concluded that "this disagreement…serves to underscore the absence of an established, objective definition of, and schedule for achieving, [full operating capability] in the solicitation."  AR 33846.  Thus, based on these circumstances, this Court determines that it was not irrational for GAO to conclude that the evaluation factor was unstated and was improperly applied in the evaluation of offerors' proposals.

Finally, Jacobs contends that it was irrational for GAO not to discuss other sections of the RFP—specifically, the transition planning provisions of the RFP—in determining whether the evaluation of full operating capability was reasonably subsumed under the RFP stated evaluation criteria.[11]  Jacobs' Br. Mot. JAR 21.  Although GAO did refer to Subfactor 1 (integration approach) for this purpose, it did so because the agency gave credit to Jacobs for full operating capability under this subfactor.  Moreover, neither the Government nor Jacobs argued at GAO, in response to IBM's allegation of an unstated evaluation factor, that the transition planning sections were relevant.

Additionally, even if GAO had examined the transition planning sections, there is nothing in them that would cause this Court to conclude that the GAO's conclusion concerning an unstated evaluation factor was clearly erroneous or irrational.  Pursuant to the RFP, the offerors were required to include a description in the transition plan "for 'ramping up' full operational support."  AR 787.  The offeror's transition plan would be evaluated based on its approach, and the evaluation would include an "assessment of the Offeror's plan to execute an organized, seamless, and timely contract phase-in and phase-out."  AR 797.  This language in the RFP does not reasonably notify offerors that their proposals would be evaluated on achieving full operating capability [***].  For example, it is not clear that "full operational support" in the transition plan is the same as "full operating capability;" that "timely" means on an [***] or that "contract phase-out" equates to full operating capability.  Therefore, the Court disagrees with Jacobs that "numerous provisions made clear that the evaluation criteria would reasonably include an offeror's ability to [***] its achievement of [full operating capability]."  *See* Jacobs' Br. Mot. JAR 20.  To the contrary, the Court is satisfied that GAO's review of the RFP was reasonable and that it provided support for its decision.

---

[9]  In its proposal, IBM stated that its [***].  AR 3228.  IBM noted, as one of several results of its plan that:  [***].  AR 3314.  IBM asserted after the agency's debriefing of the source selection decision that its proposal achieved full operating capability [***] but that it was not credited for that achievement.

[10]  In the Court's examination of the record, it found that USSOCOM recognized an offeror, other than Jacobs, for achieving full operating capability [***].  AR 4162.

[11]  Jacobs avers that GAO should have considered the transition planning sections:  (1) Section M.1.4.9 ("Subfactor 9 – Transition Planning"), AR 797, and (2) Section L.1 ("General Proposal Preparation Instructions and Notices") with regard to the requirements for the offerors' Transitioning Planning, AR 787.

In sum, the Court determines that GAO's decision that the agency improperly evaluated proposals using an unstated evaluation consideration was rational. Therefore, USSOCOM's decision to adopt GAO's recommendation and clarify its requirements for full operating capability was rational.

**2.    Failure to Provide Information to Allow Offerors to Compete on a Relatively Equal Basis**

IBM alleged in its GAO bid protest that the RFP was materially misleading because the information—the number of service desk users— used by the agency to evaluate the offerors' pricing was substantially different from the information provided in the RFP. IBM also asserted that Jacobs had information related to the number of users, which provided it a competitive advantage.

GAO acknowledged that: "As a general rule, a procuring agency must provide sufficient information in a solicitation so that offerors can compete intelligently, on a relatively equal basis." AR 33848. GAO sustained IBM's bid protest on this principle and concluded that (1) "the RFP did not reasonably provide offerors adequate information to compete on a relatively equal basis," and (2) "Jacobs apparently had information not possessed by the other offerors that enabled it to prepare its proposal on a materially different basis." AR 33848. GAO recommended that USSOCOM amend the RFP to include "all information relating to the agency's intended evaluation approach with respect to service desk requirements," and allow offerors to submit revised proposals for revaluation. AR 33853.

Jacobs argues, inter alia, (1) that it was irrational to conclude that offerors were misled by the information in the RFP; (2) that information Jacobs used was obtained as an incumbent contractor, and therefore, not improper; and (3) that IBM's protest with regard to misleading information in the RFP was untimely, and therefore, GAO's failure to address this was erroneous and irrational.[12] The Court addresses these issues in its discussion on the rationality of GAO's decision, following an overview of GAO's decision.

**a.    GAO's Decision**

GAO concluded that USSOCOM did not provide sufficient information in its RFP so that offerors could compete on a relatively equal basis. GAO's primary finding was that there was a significant disparity between information in the RFP and the information the agency used in evaluating offerors' prices, and therefore offerors were misled in preparing their proposals. GAO specifically observed that (1) offerors were required to provide pricing (per user per month) for three different levels of end-user service (bronze, silver, and gold),[13] (2) the RFP's

---

[12] Jacobs raises other issues with GAO's analysis and conclusions alleging that GAO failed to consider the agency's arguments and substituted its own judgment for that of the agency. Just because GAO reached a different conclusion than the agency does not mean that it substituted its own judgment or that its decision was irrational. The Court addresses what is sees as Jacobs' three substantive issues.

[13] The difference in the service levels in part relates to how quick the contractor must respond to end-user service requests. AR 937.

10

pricing schedule provided the maximum number of users per year for each of the service levels, (3) the agency provided the historical number of total users (56,000) per month for all user levels, and (4) the agency did not indicate the anticipated proportion of users at each service level per month or per year.  AR 33847.

Based on the annual maximum quantities in Section B of the RFP,[14] GAO determined (1) the monthly maximum number of users and (2) the relative mix of users by service level:[15]

      Bronze:    80,000 users per month (55 percent of all monthly users)

      Silver:     50,000 users per month (35.5 percent of all monthly users)

      Gold:      15,000 users per month (10.5 percent of all monthly users)

*Id.*

GAO compared the above information in the RFP to the numbers used by the agency to evaluate offerors' prices:[16]

      Bronze:    56,000 users per month (94.4 percent of all monthly users)[17]

      Silver:     3,000 users per month (5 percent of all monthly users)

      Gold:      300 users per month (.5 percent of all monthly users)

AR 33848.

---

[14]  Section B of the RFP provided the maximum annual number of service desk users per level:  960,000 for Bronze, 600,000 for Silver, and 180,000 for Gold.  AR 703-04.

[15]  GAO took the maximum number of users per year for each of the service levels and divided by 12 to reach the maximum number of users per month for each service level.  AR 33847.  Then, it calculated the percentage for each user level of the monthly total of all user levels by dividing the monthly maximum amounts for each service level by the total monthly maximum amounts for all levels.  *Id.*  Indeed, after indicating the monthly maximum number of users per level based on the RFP annual numbers of users, GAO noted that:  "[T]he RFP included information indicating that approximately 55 percent of the users were bronze users, approximately 35.5 percent were silver users and approximately 10.5 percent were gold users."  *Id.*

[16]  USSOCOM informed the offerors that an estimate of the actual monthly number of users by service level was not available.  AR 1039.  Apparently, just a few days after USSOCOM received the offerors' proposals, it determined the estimated number of users by service level.  The number of bronze users (56,000) was based on "the number of users assigned to [Headquarters] and Service Components." AR 65.  The number of silver users (3,000) was based on the number of "current mission critical users" and the number of gold users was based on the number of certain officers, senior civilian positions, and secretaries supporting these positions.  *Id.*  The Court is puzzled by the agency's decision not to provide an estimate of monthly users by service level to offerors so that the offerors would have better information to prepare their proposals.

[17]  USSOCOM determined the estimated monthly number of users by level.  GAO calculated the percentage for each user level of the monthly total of all user levels by dividing the USSOCOM's estimated amounts for each service level by the total monthly estimated amount for all levels.  USSOCOM did not make any references to the proportions of monthly users by level.

Looking at these figures, GAO observed that the relative percentage of users in each service level based on the maximum numbers in the RFP differed significantly with the percentages based on the number of users used by the agency in evaluating offerors' proposals. GAO established that these differences had a material impact on the competition. Specifically, according to GAO's analysis, "had the agency either used the maximum quantities specified in section B of the RFP for each service level, or applied the relative percentages of users at each service level indicated in section B, Jacobs' proposal would not have been competitive" with IBM or other offerors. AR 33848-49. Thus, GAO concluded that "Jacobs likely was aware that the agency would not use the relative proportions of users at each service level as indicated in section B of the RFP in its evaluation of prices for this aspect of the requirement." AR 33849-50.

### b.    Rationality of GAO's Decision

The Court concludes that GAO's decision that the RFP did not provide sufficient information on desk service user requirements to allow offerors to compete on a relatively equal basis was rational. GAO's decision was based on a reasonable review of the record, that included, inter alia, the RFP, the agency's responses to offerors' questions, offerors' proposals, and the agency's evaluation of offerors' prices. The record clearly shows that the maximum number of desk service users by service level provided in the RFP differed significantly from the numbers used in the evaluation of offerors' pricing. Thus, GAO reasonably concluded that the actual numbers the agency used for evaluation purposes were inconsistent with the numbers included in the RFP, and that the relative mix of users the agency used to evaluate offerors' prices varied significantly from the relative mix of users represented in the RFP maximum quantities.

GAO's determination of the monthly maximum number of users and the relative mix of users by service level implicitly presumes that the offerors could have reasonably relied on the annual maximum service levels, and in particular, the relative proportions for each service level per year, in developing their proposal and pricing strategy. Jacobs objects to GAO's presumption and argues that "there was absolutely no indication that USSOCOM intended to use [the stated maximum] quantities, or their relative proportions, in evaluating the offerors' proposals."[18]   Jacobs' Br. Mot. JAR 27-28; Jacobs' Resp. & Reply 25-27. Jacobs asserts that it was "irrational for GAO to conclude that offerors would reasonably be misled into concluding that the maximum per-year quantities found in Section B bear any reasonable relationship to the evaluation quantities to be employed by USSOCOM." Jacobs' Resp. & Reply 28.

The Court disagrees with Jacobs that GAO's conclusions were irrational. GAO, by the nature of its analysis, does imply that the offerors could have reasonably considered the maximum quantities in the RFP in determining their prices. This inference is not irrational as Jacobs suggests. First, although Jacobs argues that USSOCOM provided no indication that the agency would use the RFP maximum quantities, Jacobs does not provide any citations to the

---

[18]   In support of Jacobs' argument that USSOCOM did not provide any indication that the maximum quantities in the RFP would be used for evaluation, it states, inter alia, that USSOCOM "directed offerors to use 'their experience with similar efforts to derive their estimated user numbers." Jacobs' Resp. & Reply 26-27 (citing AR 1038).

record that indicate that the maximum quantities were irrelevant and should be ignored.[19]  In fact, USSOCOM stated that it would use the maximum quantities to compute the maximum price and include that amount in the contract.  AR 1811.  Second, it is plausible that the relative proportion of desk service users by service level (bronze, silver and gold) is important to an offeror's competitive and pricing strategies, and that the offerors would have thought that the relative mix of the estimated quantities (for purposes of evaluation) would have some relationship to the relative mix of the RFP maximum quantities.  As a final point, the Court notes that for the bronze service level prices, the offerors were required to specify unit prices for different ranges of users per month,[20] which included a range up to the maximum number of users in the RFP (i.e., 80,000 users).  *See* AR 979, AR 1326.  Thus, the offerors were in fact required to determine costs and unit pricing for the maximum number of bronze users.

In sum, it was not irrational for GAO to imply that offerors may have reasonably relied upon the maximum quantities in the RFP in determining the relative mix of service levels, the resulting estimated quantities by service level, and their pricing structure.  In addition, as discussed above, there is ample support that the information in the RFP was significantly different from the information the agency used for evaluation purposes.  Therefore, GAO's conclusion that the information was misleading was rational.

### c.      Relevancy of Jacobs' Other Arguments

Jacobs' other primary contentions that GAO's decision was irrational do not have merit.  Specifically, Jacobs argues (1) that GAO failed to consider Jacobs' incumbent contractor status, and (2) that GAO failed to consider that IBM's bid protest alleging misleading information was not filed timely pursuant to federal regulations.  The Court determines that both these issues are irrelevant to the rationality of the agency's decision to resolicit the procurement.

As discussed in the Standard of Review section, the Court is reviewing the agency's decision to take corrective action based upon GAO's recommendation.  Whether or not the agency's decision to take corrective action was rational depends on whether GAO had a rational basis for its findings that the agency violated a procurement law or regulation, and for its resulting recommendations for corrective action.  The scope of this Court's review of GAO's decision is necessarily limited to those aspects that directly relate to the improprieties of the agency's procurement action.[21]  Thus, issues that challenge GAO's decision that the agency

---

[19]  In the Court's examination of the record, it found that, in contrast, in reference to the hypothetical example in the RFP, USSOCOM stated that:  "The example is included for illustration purposes only."  AR 1036.

[20]  In comparison, for silver and gold service levels the offerors were only to provide a single monthly unit cost per user.

[21]  The Competition in Contracting Act ("CICA") grants the Comptroller General of GAO authority in a bid protest (1) to determine whether a contracting agency's solicitation or award of contract is in violation of a procurement statute or regulation, and (2) to recommend that the agency take corrective action if the agency did not comply with the statute or regulation.  31 U.S.C. § 3554(b)(1).  GAO decisions are only recommendations and not binding on the agency.  *See* 31 U.S.C. § 3554(b), (e); *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989).

violated a procurement statute or regulation are within the purview of this court; but other issues generally are not.[22]

(1)    Incumbent Contractor Status

As discussed previously, GAO concluded that offerors, other than Jacobs, were misled by the information in the RFP, and that Jacobs appeared to have insight into the agency's actual service desk requirements.  Jacobs avers that GAO's failure to consider Jacobs' source of information for service desk users was "irrational and a clear error of law."  Jacobs' Br. Mot. JAR 26-27.  Jacobs argues that any information that it had related to service desk users was obtained as an incumbent contractor, which by itself was not improper.  *Id.*

Whether or not GAO was an incumbent contractor, however, is not relevant to GAO's finding that the offerors were misled by information in the RFP, or to the finding that Jacobs appeared to have information that gave it a competitive advantage.  GAO did not conclude that Jacobs' access to information was improper.  Furthermore, GAO's recommendation that USSOCOM provide information that Jacobs, an incumbent contractor, appeared to have is not contrary to law.  Jacobs argues that, based on GAO precedent, an agency is not required to provide all offerors information that one of the offerors acquired as an incumbent contractor.  An agency, however, clearly has discretion to provide the information to all offerors, particularly if the agency is taking action to ensure a fair and competitive procurement.

(2)    Timeliness of IBM's Bid Protest

With regard to the timeliness of IBM's protest, Jacobs contends that GAO's decision was irrational and represented a clear error of law because GAO did not assess and find that IBM's protest ground was untimely pursuant to 4 C.F.R. § 21.2(a)(1).[23]  Jacobs' Br. Mot. JAR 27-28.  Similar to the incumbent contractor status issue, whether or not IBM's protest was timely is not relevant to GAO's finding that offerors were misled by information in the RFP and GAO's decision that the RFP did not provide sufficient information so that offerors could compete on a relatively equal basis.

In sum, Jacobs' arguments based on incumbent contractor status and timeliness are irrelevant to the Court's ultimate determination of the rationality of USSOCOM's decision to revise the RFP.

**3.    Jacobs' Arguments That GAO Failed to Determine Prejudice**

In addition to Jacobs' arguments discussed above, Jacobs contends that GAO's decisions —(1) that the agency applied unstated evaluation criteria, and (2) that the agency failed to

---

[22] For clarification, this Court is not reviewing the rationality of GAO's overall decision to sustain the bid protest, but rather, the rationality of GAO's findings and recommendations with regard to the agency's violation of a procurement statute or regulation (the subject of the bid protest before GAO).

[23] "Protests based upon alleged improprieties in a solicitation which are apparent prior to bid opening or the time set for receipt of initial proposals shall be filed prior to bid opening or the time set for receipt of initial proposals."  4 C.F.R. § 21.2(a)(1).

provide offerors an opportunity to compete on a relatively equal basis—were irrational and contrary to law because GAO failed to determine whether IBM was prejudiced by the alleged agency actions and failed to hold IBM to its burden to demonstrate prejudice.  Jacobs' Br. Mot. JAR 33.  Based on the preceding discussion, however, the Court determines that Jacobs' issues with regard to prejudice are not within the scope of the Court's review of GAO's decision.  Although prejudice is essential to a decision to sustain a bid protest, it has no bearing on GAO's determination of whether the agency violated a procurement statute or regulation, and the resulting recommendation.  In fact, even if GAO denied the protest (e.g., for lack of prejudice), the agency could still decide to take corrective action.

### 4.     USSOCOM's Corrective Action

In sum, the Court determines that GAO's decisions that (1) the agency improperly applied unstated evaluation criteria, and (2) that the agency failed to provide information to allow offerors to compete on a relatively equal basis had a rational basis.  Therefore, USSOCOM's decision to adopt GAO's recommendations and amend the RFP to clarify full operating capability requirements and provide the desk service user quantities that the agency will use for evaluation purposes was rational and not contrary to law.

## III.     CONCLUSION

For the reasons set forth above, Jacobs has not demonstrated that USSOCOM's decision to adopt GAO's recommendations was arbitrary, capricious, an abuse of discretion, or in violation of procurement law.  Therefore, the Court **DENIES** Jacobs' motion for judgment on the administrative record and **GRANTS** the Government's and IBM's cross-motions for judgment on the administrative record related to the agency's initial procurement.


s/ Edward J. Damich
EDWARD J. DAMICH
Judge